


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

CONSTANCE OEHMLER,

Plaintiff,

-against-

DOMAINE SELECT WINE ESTATES LLC, CHARMER SUNBELT GROUP, ADP TOTALSOURCE, INC., PAOLO DOMENEGHETTI, individually and as CEO of Domaine Select Wine Estates LLC,

Defendants.

-----------------------------------------------------------X

**Civil Action No.:** 09-CIV-2244

**AMENDED COMPLAINT**

Plaintiff, Constance Oehmler, by her attorneys, Kaiser Saurborn & Mair, P.C., as and for her complaint against defendants, alleges as follows;

## PARTIES, JURISDICTION, AND NATURE OF ACTION

1. Plaintiff, Constance Oehmler ("Oehmler" or "plaintiff"), is a citizen of the State and City of New York.

2. Defendant, Domaine Select Wine Estates LLC ("Domaine" or "defendant"), is a corporation authorized to do business in New York State with its principal place of business in New York County located at 555 8th Avenue, Suite 2302, New York, NY 10018.

3. Defendant, Paolo Domeneghetti ("Domeneghetti" or "defendant"), is employed by Domaine in the position of Chief Executive Officer.

4. Charmer Sunbelt Group ("Charmer" or "defendant") is the alter-ego of Domaine, sharing entirely with Domaine legal, human resource, loan financing, administration, risk

management, information technology, and other management functions. [Domaine and Charmer together will be referred to as the "Company."]

5. ADP TotalSource, Inc. ("ADP" or "defendant") is a corporation authorized to do business in New York State and was plaintiff's employer.

6. Plaintiff was subjected to persistent and malicious sexual harassment and gender discrimination. Plaintiff suffered a psychiatric illness for which she requested leave pursuant to the Family Medical Leave Act. Further, plaintiff objected to the illegal treatment of a work colleague suffering from a disability. Ultimately, plaintiff was terminated in retaliation for her complaints of illegal discrimination and for her request for medical leave. Plaintiff asserts claims pursuant to New York State Human Rights Law [Executive Law § 296], New York City Human Rights Law [New York City Administrative Code § 8-502 (a)], and the Family Medical Leave Act ["FMLA"].

7. This action seeks compensatory and punitive damages for defendants' violations of New York State, New York City, and Federal law.

8. Original jurisdiction of this Court is founded upon 28 U.S.C. §1331 and 1332 (a), *et seq.*, in that this is a civil action wherein the matters in controversy arise under the laws of the United States, 29 U.S.C. § 2615.

9. This Court has personal jurisdiction over the defendants named in the complaint pursuant to 31 U.S.C. § 3732 (a) because the defendants conduct business in this district and because an act proscribed by 29 U.S.C. § 2615 occurred within this district.

10. Venue in this Court is proper under 28 U.S.C. §§ 1391 (b) and (c) and 31 U.S.C. § 3732 (a) because the defendants do business in this district and all the events or omissions

giving rise to the violations of 29 U.S.C. § 2615 alleged in the complaint occurred in this district.

## BACKGROUND

## I.

## OEHMLER'S EMPLOYMENT

11. Plaintiff commenced her employment at Domaine on or about April 3, 2006, in the position of Vice-President of Finance and Administration.

12. At all relevant times, plaintiff performed her job duties in superior fashion.

13. At all relvant times, defendants had a responsibility to maintain a work environment free of illegal disability discrimination.

## II.

## THE SEXUAL AND GENDER HARASSMENT

14. Mr. Domeneghetti regularly engaged in abusive conduct towards women in the office. The conduct included, but was not limited to:

a) Regularly screaming at women in the office with little or no provocation;

b) Referring to women in the office as "bitches" and on one ocassion screaming at plaintiff to "get those bitches out of here";

c) On one occasion in July 2008, advising Oehmler that employees she supervised were like "little babies sucking on your tits. You need to pull them away from your tits.";

d) Engaging in an on-going sexual affair with a female employee who was then promoted three times, and treated favorably in other respects, as a consequence of the affair at the expense of other employees;

e) Routinely and openly viewing offensive pornographic material in the office, circulating the pornography to employees at work, and verbally abusing anyone who dared object to his conduct;

f) Making unwanted sexual advances towards female employees;

g) On one occassion, sticking his hand up the skirt of a female employee;

h) Regulary referring to Ms. Oehmler as "faccia brutta," the translation of which into English is "ugly face";

i) Tolerating the sexual harassment of other male employees towards female employees.

15. Mr. Domeneghetti, as well as other managers, constantly made derogatory statements and jokes regarding homosexuals.

16. In particular, Mr. Domeneghetti directed derogatory remarks towards Rachel Mark, a gay employee, and her female partner.

17. Ms. Mark and her partner moved into Ms. Oehmler's loft for several weeks following her husband's death. Mr. Domeneghetti repeatedly inquired to Ms. Oehmler whether she could observe or hear them engaging in sexual relations.

18. Mr. Domeneghetti inquired to Ms. Oehmler regarding Ms. Mark's wedding. When Ms. Oehmler informed him that lightning struck the tent, he told her that it was God's way of expressing disapproval for the wedding which he described as unnatural.

19. Ms. Oehmler complained to various managers as well as Human Resources about a vile anti-gay remark made by a supplier concerning a gay salesman. The supplier stated that the only thing he hates more than niggers is queers. Defendants took no actions to investigate the complaint. Indeed, Allison Domeneghetti stated that she had no intention

of "making waves with our biggest producer over a loser like that kid [gay salesman]."

20. The harassment continued despite the repeated notice Mr. Domeneghetti received from female employees, including Ms. Oehmler, that his conduct was highly offensive.

21. Sexually harassing conduct pervaded the workplace, was committed by several different male employees, was acquiesced in by Mr. Domeneghetti, and created a workplace culture in which it was acceptable to degrade, belittle, and demean women.

22. The harassment rendered Ms. Oehmler's working environment intolerably hostile.

**III.**

**MS. OEHMLER OBJECTED TO THE ILLEGAL TREATMENT OF A DISABLED CO-WORKER**

23. Ms. Caterina Buscetta, an Assistant Controller for Domaine, suffers from multiple sclerosis.

24. Mr. Domeneghetti ordered Ms. Oehmler to terminate Ms. Buscetta's employment.

25. Ms. Buscetta's disability required an FMLA medical leave of absence from May 1, 2008 until July 1, 2008.

26. Ms. Oehmler advised him that firing her was not justified and would be illegal.

27. On several occassions, Mr. Domeneghetti screamed at Ms. Oehmler that she was incompetent for not terminating Ms. Buscetta's employment.

IV.

**MS. OEHMLER REQUESTED FMLA MEDICAL LEAVE AS A CONSEQUENCE OF HER OWN PSYCHIATRIC ILLNESS**

28. As a consequence of on-going emotional distress resulting from the death of her husband earlier in the year, in October and November 2008, Ms. Oehmler inquired to Ms. Domeneghetti, Allison Domeneghetti, Chief Operating Officer, and several other managers whether she may take medical leave to address her psychiatric issues.

29. No one, including Mr. Domeneghetti, advised her that she could take medical leave. Instead, on October 29, 2008, Mr. Domeneghetti screamed and ranted at her, calling her "a fucking failure" and screaming to others in the office that she was a "fucking bitch."

30. On October 30, 2008, Ms. Oehmler called Mr. Tim Seats, Director of Charmer's Human Resource Group, and inquired about FMLA medical leave.

31. Ms. Oehmler inquired whether FMLA covered employees with emotional conditions. She further advised him that she was currently taking an anti-depressant.

32. Mr. Seats advised her that the FMLA covered emotional conditions. He further advised her that she would need a doctor's note. During the same meeting, Ms. Oehmler advised Mr. Seats that the day prior Mr. Domeneghetti screamed at her repeatedly and referred to her as a "fucking bitch" to others in the office.

33. On November 11, 2008, Domaine posted a listing with a recruiter for Ms. Oehmler's replacement.

34. Ms. Oehmler was not immediately aware of the posting. On November 17, 2008, Ms. Oehmler advised Mr. Seats that she was scheduled to visit her doctor the next day. She further advised him that her doctor was recommending that she take FMLA leave.

35. She also advised Robert Chernowski, Human Resources director at Domaine, that her doctor recommended that she take FMLA leave.

36. Later the same day, November 17, 2008, her employment was terminated.

37. The Company provided Ms. Oehmler no credible explanation for the termination.

38. Plaintiff was terminated by the Company because of her medical disability, her request for FMLA leave, her complaint of the illegal harassment, and her objection to the illegal treatment of a disabled work colleague.

39. Defendants conspired to discriminate and retaliate against plaintiff.

40. Defendants aided and abetted the discrimination and retaliation against plaintiff.

41. Upon information and belief, defendants knew that their actions violated Federal, State, and City Law.

42. Upon information and belief, defendants acted maliciously and/or in reckless disregard of plaintiff's civil rights.

**FIRST CAUSE OF ACTION**

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "42" of the complaint with the same force and effect as if separately alleged and reiterated herein.

44. Defendants failed to reasonably accommodate plaintiff's disability and discriminated and retaliated against plaintiff in the terms and conditions of her employment because of her disability and because of her requests for reasonable accomodation as well as her opposition to the illegal treatment of a disabled colleague in violation of New York State Executive Law § 296, *et. seq.*

45. Defendants also sexually harassed plaintiff and discriminated against her because of her gender and retaliated against her for her gender discrimination complaints in violation of New York State Executive Law § 296, *et. seq.*

46. As a result, plaintiff suffered damages for lost past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

47. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "42," "44," and "45" of the complaint with the same force and effect as if separately alleged and reiterated herein.

48. As a result, defendants violated New York City Administrative Code § 8-502 (a) causing plaintiff to suffer damages for lost past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

49. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "42," "44," and "45" of the complaint with the same force and effect as if separately alleged and reiterated herein.

50. Defendants failed to reasonably accommodate plaintiff's disability and discriminated and retaliated against plaintiff in the terms and conditions of her employment because of her disability and because of her requests for family medical leave as well as her opposition to the illegal treatment of a disabled colleague. [29 U.S.C. § 2615]

51. As a result, plaintiff suffered damages for lost past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

(i) On the First Cause of Action, actual damages against defendants in an amount to be determined at trial;

(ii) On the Second Cause of Action, actual damages against defendants in an amount to be determined at trial and punitive damages against defendants in an amount to be determined at trial;

(iii) On the Third Cause of Action, actual damages against defendants in an amount to be determined at trial and statutory liquidated damages;

(iv) Statutory attorney's fees pursuant to § 8-502 of the New York City Administrative Code and the Family Medical Leave Act [29 U.S.C. § 2615];

(v) Disbursements and other costs; and

(vi) For such other relief which the Court deems just and proper.

Dated: New York, New York
May 21, 2009

**KAISER SAURBORN & MAIR, P.C.**

By: ______________________________
Daniel J. Kaiser [DK-9387]

Daniel J. Kaiser, Esq.
Attorneys for Plaintiff
111 Broadway, 18th Fl.
New York, New York 10006
(212) 338-9100

**AFFIDAVIT OF SERVICE BY FEDERAL EXPRESS**

Hannah Officer, being duly sworn, deposes and says, that she is not a party to the within action, is over 18 years of age and resides in New York State.

That on the 21st day of May, 2009, affiant served the Within **Amended Complaint** upon defendants' counsel by sending via Federal Express Standard Overnight delivery a true copy of the same to:

Eric C. Stuart
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
10 Madison Avenue
Morristown, NJ 07962

Susan Kantor
Jackson Lewis
1 North Broadway
White Plains, NY 10601

HANNAH OFFICER

Sworn to before me this
21st of May, 2009

NOTARY PUBLIC

DANIEL J. KAISER
Notary Public, State of New York
No. 02KA6135385
Qualified In New York County
Commission Expires October 17, 2009